IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CR-30-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ANTHONY ANDREWS, | ) | |
| | ) | |
| Defendant. | ) | |

On March 31, 2020, Anthony Andrews ("Andrews") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 519]. On April 30, 2020, the United States responded in opposition [D.E. 521]. On May 4, May 11, and July 6, 2020, Andrews supplemented his motion [D.E. 522, 524, 534], and the court sealed Andrews's medical information. On June 15, 2020, Andrews moved to place his name under seal [D.E. 530]. As explained below, the court denies Andrews's motions.

I.

On October 11, 2016, pursuant to a written plea agreement, Andrews pleaded guilty to conspiring to manufacture, distribute, dispense, and possess with the intent to distribute a quantity of endocet, methadone, oxycodone, oxycontin, and oxymorphone. See Rule 11 Tr. [D.E. 481] 2–23; [D.E. 184, 383]. On November 15, 2018, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Sent. Tr. [D.E. 480] 2–9; [D.E. 465, 469]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court overruled Andrews's objection and calculated Andrews's total offense level to be 31, his criminal history category to be IV, and his advisory

guideline range to be 151 to 188 months' imprisonment. See Sent. Tr. at 2–9. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Andrews to 132 months' imprisonment. See id. at 15–21. Andrews did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5249 (2018). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious

2

deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

that "an extraordinary and compelling reason need not have been unforeseen at the time of the sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Nevertheless, section 1B1.13 provides applicable policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See, e.g., United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished). In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id.; Dinning v. United States, No. 2:12-cr-84, 2020 WL 1889361, at *2 (E.D. Va. Apr. 16, 2020) (unpublished).

---

       (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

Andrews seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Andrews relies on the "medical condition of the defendant" policy statement in application note 1(A) to U.S.S.G. § 1B1.13 and the "other reasons" policy statement in application note 1(D) to U.S.S.G. § 1B1.13. See [D.E. 519, 522, 524, 534]. Specifically, Andrews cites the COVID-19 pandemic, his Type 1 diabetes, his glaucoma, and his high cholesterol. Id.

As a preliminary matter, the court assumes without deciding that Andrews has exhausted all administrative remedies, or alternatively that the warden received Andrews's compassionate release request and 30 days have elapsed from receipt. See 18 U.S.C. § 3582(c)(1)(A). Andrews asserts that he submitted a compassionate release request to the warden on February 8, 2020, and that he received no response. See [D.E. 519] 1. Moreover, the government has not properly invoked section 3582's exhaustion requirements to challenge Andrews's exhaustion of administrative remedies. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Andrews's claim on the merits.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). While Andrews states that he has Type 1 diabetes, glaucoma, and high cholesterol, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Andrews serves his sentence. Accordingly, reducing Andrews's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic coupled with Andrews's health conditions are extraordinary circumstances consistent with application note 1(D). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it might spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Andrews's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8. Andrews engaged in serious criminal conduct from 2012 through March 2016. Specifically, after having already served two federal sentences for felony drug trafficking and while on federal supervised release, Andrews organized and directed five or more participants in a conspiracy to manufacture, distribute, dispense, and possess with intent to distribute a quantity of edocet, methadone, oxycodone, oxycontin, and oxymorphone. See PSR ¶¶ 10–27. Andrews was personally responsible for distributing 381.3 grams of actual oxycodone, .9 grams of hydrocodone, and 6.3 grams of methadone. See id. at ¶ 26. The estimated street value of the drugs was $388,500. See id. As part of the scheme, Andrews befriended a corrupt physician named Dr. Donovan Dixon who provided illegal prescriptions to Andrews. See id. ¶¶ 10–26.

Serious criminal conduct defines Andrews's life. Andrews has convictions for false imprisonment, felony possession of crack cocaine, felony maintaining a vehicle, dwelling, or place for a controlled substance, felony possession of cocaine, felony conspiracy to distribute and possess with intent to distribute cocaine, felony conspiracy to launder monetary instruments, and felony distribution of cocaine base (crack). See id. ¶¶ 32–36. The court also has considered Andrews's post-incarceration conduct, his potential exposure to COVID-19, and his medical conditions. Cf.

6

Pepper v. United States, 562 U.S. 476, 480 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Andrews's arguments, the government's persuasive response, and the need to punish Andrews for his criminal behavior, to incapacitate Andrews, to promote respect for the law, to deter others, and to protect society, the court declines to grant Andrews's motions for compassionate release. See, e.g., Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

II.

As for Andrews's motion to seal his name, Andrews does not specify the documents within which he requests the court to seal his name. See [D.E. 530] 1–2. Apparently, Andrews asks the court to seal his name in every document on the criminal docket and make the criminal docket anonymous. See id.

This court has considered the motion under the governing standard. See, e.g., United States v. Doe, 962 F.3d 139, 145–53 (4th Cir. 2020); Doe v. Pub. Citizen, 749 F.3d 246, 272–73 (4th Cir. 2014). The court makes the following findings of fact and conclusions of law after considering the common law and First Amendment right of access.

"The Fourth Circuit has directed that before sealing publicly filed documents the court must first determine if the source of the public's right to access the documents is derived from the common law or the First Amendment." Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275-D, 2011 WL 901958, at *1 (E.D.N.C. Mar. 15, 2011) (unpublished). "The common law presumption in favor of access attaches to all judicial records and documents, whereas First Amendment protection is extended only to certain judicial records and documents." Id. The common law does not provide as much protection to the interests of the public as the First

7

Amendment. Id. Although there is a presumption of access to judicial records, that presumption can be rebutted if there is a countervailing "significant interest." Id.

The First Amendment right of access applies to Andrews's motion and his criminal docket. See, e.g., Doe, 962 F.3d at 146–53; Pub. Citizen, 749 F.3d at 272–73; In re State-Record Co., 917 F. 2d 124, 129 (4th Cir. 1990) (per curiam). The court may seal Andrews's name and make the criminal docket anonymous "only if (1) closure serves a compelling interest; (2) there is a substantial probability that in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest." Doe, 962 F.3d at 146; Pub. Citizen, 749 F.3d at 272–73; In re Washington Post Co., 807 F.2d 383, 392 (4th Cir. 1986).

The court assumes without deciding that sealing Andrews's name and making the docket anonymous would serve a compelling interest of enhancing Andrews's safety. However, there is not a substantial probability that absent the requested sealing, that compelling interest would be harmed. Although Andrews wants to seal his name and make his criminal docket anonymous, there are alternatives far less severe under the First Amendment that already protect Andrews's safety. Notably, the criminal docket comports with this court's Standing Order 09-SO-02 (E.D.N.C. Feb. 12, 2010). Cf. Doe, 962 F.3d at 147. Moreover, nothing in this order implicates Andrews's safety. Likewise, Andrews has not identified specific documents on the public portion of the criminal docket that threaten his safety or specific threats arising from the criminal docket, and sealing the entire criminal docket is overbroad. After all, the public and press have a qualified right of access to Andrews's name and the public portion of the criminal docket, and the public portion of the docket has been available (without incident) since 2016. See Doe, 962 F.3d at 143–53; Pub. Citizen, 749 F.3d at 265–75 (holding that the public and press have a presumptive right to inspect civil docket);

8

In re State-Record Co., 917 F.2d at 127–29 (holding that the district court erred in sealing entire criminal docket). Finally, an alternative to Andrews's requested sealing adequately protects the compelling interest. Specifically, adherence to Standing Order 09-SO-02 (E.D.N.C. Feb. 12, 2010) and sealing the motion at docket entry 530 adequately protects Andrews's compelling interest. Thus, the court denies Andrews's motion to seal.

III.

In sum, the court DENIES Andrews's motions for compassionate release [D.E. 519, 534], DENIES Andrews's motion to place his name under seal [D.E. 530], but ORDERS the motion at docket entry 530 to remain under seal.

SO ORDERED. This 24 day of August 2020.

JAMES C. DEVER III
United States District Judge